Argued and submitted March 14, affirmed April 11, 2007

McKAY'S MARKET OF COOS BAY, INC.,
*Plaintiff-Respondent,*

*v.*

Faye R. PICKETT
and Florence Auto Parts, Inc.,
*Defendants,*

*and*

JF's INVESTMENTS, LLC,
dba The Market Bin,
*Defendant-Appellant.*

Lane County Circuit Court
160502948; A131198

157 P3d 291

Judith Giers argued the cause for appellant. With her on the briefs was Hershner Hunter, LLP.

David B. Shannon argued the cause for respondent. With him on the brief was Bertoni & Todd.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

In this action for declaratory and injunctive relief, the issue is whether defendant's operation of a coffee "cart" violates a deed restriction that prohibits building a "building" on the property on which the cart is located and that requires the property to be used as a parking lot. The trial court concluded that the operation of the coffee cart does violate the deed restriction. One of the defendants appeals, arguing that the trial court should have construed the deed restriction narrowly in favor of the free use of the property. We affirm.

The relevant facts are not in dispute. The McKay family owned two parcels of commercial property located in Florence. On one parcel, the family operated McKay's Market. The adjacent parcel consisted of a parking lot that was located in front of an auto parts store that was owned by the Picketts.

In 1979, the McKays sold the parking lot property to the Picketts, who wanted to use the lot to provide parking for their auto parts store. The parties, however, agreed to a restriction concerning the use of the parking lot:

"RESTRICTION: The GRANTEES herein, their heirs and assigns agree not to build any building on said property, with the possible exception of an extension of the existing building of Florence Auto Parts—east to a point no closer than 87 feet from the Northeast corner of Lot 8 and no closer than 50 feet from the Southeast corner of Lot 10. The remaining portion of said described property will remain as a parking lot and McKAY GROCERY CO. will have right of ingress and egress on said parking lot."

In 2004, defendant JF'S Investments (defendant) entered into a lease/purchase agreement of the Picketts' store and the parking lot. Defendant was aware of the deed restriction before closing. Defendant purchased a prefabricated structure from which to sell coffee. The structure is variously labeled by the parties a "cart," a "hut," a "trailer," a "shack," and a "building." Whatever the appropriate label—we have somewhat arbitrarily employed the term "cart"—the structure measures eight feet by 12 feet and consists of four walls,

windows, and a pitched roof, all constructed on a trailer chassis. Defendant towed the cart into place on the parking lot and then removed its wheels. Defendant did not ask permission from the McKays to operate the business on the parking lot. Defendant removed a portion of the asphalt covering the parking lot near the cart in order to install water, sewer, and electrical lines and also installed curbing and landscaping. Defendant connected the cart to the utility lines and then recovered the parking lot surface. The cart itself occupied two parking spaces. And, when the business was operating, lines of waiting cars occupied between one and four additional spaces.

A dispute later arose about whether defendant lawfully could operate the business on the parking lot. Plaintiff McKay's Market ultimately initiated this action, seeking a declaration that defendant's coffee cart violated the restrictions in the deed that prohibited building any buildings on the property and that required the property to be used as a parking lot. Defendant contended that the operation of the coffee cart did not violate the restriction, because defendant had not "buil[t]" the cart and because the cart did not constitute a "building."

The trial court concluded that the operation of the coffee cart violated the deed restriction in two independent respects. First, the court concluded that the operation of the cart ran afoul of the prohibition on "build[ing] any building." The court reasoned that the wording of the restriction was ambiguous in that it reasonably could have been intended to embrace small structures like defendant's coffee cart or could have been intended to be more narrowly focused on larger, permanent structures. The court turned to extrinsic evidence of the intentions of the McKays and the Picketts in negotiating the deed restriction and, on the basis of that evidence, resolved the ambiguity in favor of the McKays. According to the court, the parties who negotiated the deed restriction plainly intended that structures like defendant's coffee cart not be permitted on the parking lot.

Second, the court concluded that defendant's operation of the coffee cart ran afoul of the independent restriction that, with the exception of a limited extension of the auto

parts building, "[t]he remaining portion" of the property "will remain as a parking lot." The court found that "the parking lot is not just being used and remaining as a parking lot with this structure because it is used as a place of business for another business" on the premises.

On appeal, defendant argues that the trial court erred in arriving at both conclusions, although its brief is devoted almost exclusively to the court's first conclusion—that the operation of the cart violated the restriction against "build[ing] any building." As to that conclusion, defendant contends that the court erred in considering extrinsic evidence of the parties' intentions at all, because the restriction that defendant not "build any buildings" unambiguously has no application to defendant's operation of a coffee cart. Even if the restriction is ambiguous in that regard, defendant argues, the court erred in considering the particular kind of extrinsic evidence that plaintiff offered in this case, because that evidence amounted to nothing more than the subjective understandings of the parties to the original deed restrictions. In defendant's view, such evidence—while perhaps properly considered in the context of other contractual disputes—may not be considered when the dispute concerns the meaning of a deed restriction.

As to the trial court's second conclusion, defendant briefly argues that the court erred in concluding that the operation of the coffee cart violated the restriction that the property be used as a parking lot, because the property remains "primarily a parking lot, with parking spaces and travel lanes." According to defendant, nothing in the wording of the restriction requires that the parking lot be used *exclusively* as a parking lot.

For defendant to prevail on appeal, it must persuade us that the trial court erred in concluding that defendant violated the deed restriction in both respects. Because we conclude that the trial court did not err in concluding that defendant's operation of the coffee cart violated the requirement that the parking lot remain a parking lot, we need not address defendant's other contentions about whether the court also erred in concluding that operating the cart

amounted to building a "building" within the meaning of the deed restriction.

■ The applicable legal principles are familiar. When we interpret any written instrument, our objective is to ascertain the meaning that most likely was intended by the parties that entered into it. ORS 42.240 ("In the construction of an instrument the intention of the parties is to be pursued if possible[.]"). That objective applies to the interpretation of contracts, including deed restrictions. *Yogman v. Parrott*, 325 Or 358, 364, 937 P2d 1019 (1997) (citing ORS 42.240). We ascertain the meaning most likely intended by the parties by means of a three-step inquiry. *Id.* at 361-63. We begin with the text of the disputed provision in the context of the instrument as a whole. *Id.* In examining the text of the disputed provision we determine whether that provision is ambiguous, for, if the provision is unambiguous, we enforce the provision according to its terms as a matter of law. *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995). A contractual provision is "ambiguous" only if it is capable of more than one plausible and reasonable interpretation. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 313, 129 P3d 773, *rev den*, 341 Or 366 (2006). If the disputed provision is ambiguous, we proceed to a second step that involves examining extrinsic evidence of the contracting parties' intent. *Yogman*, 325 Or at 363. If resort to such extrinsic evidence does not resolve the ambiguity, then we proceed to a third and final step, namely, resort to "appropriate maxims of construction." *Id.* at 364.

■ In this case, we conclude that the parties' dispute may be resolved at the first level of analysis. The deed restriction prohibits building any building on the property "with the possible exception of an extension of the existing building of Florence Auto Parts." The restriction then proceeds to describe precisely—in terms of feet from the lot boundaries— how far that exception extends. In the very next sentence, the restriction continues, "The remaining portion of said described property will remain as a parking lot[.]" It is clear—defendant expressly concedes the point—that "the remaining portion" refers to the portion of the property that is not covered by the exception for extending the building. Thus, the restriction plainly requires that the portion of the

property that is not covered by the exception for extending the existing auto parts building "will remain as a parking lot."

It is also clear that, with the operation of defendant's coffee cart, the remaining property does not "remain as a parking lot." Defendant dug up portions of the parking lot, installed utilities, and moved onto the parking lot a structure that takes up two parking spaces, along with installing curbs and landscaping. The operation of the business further takes up between one and four additional parking spaces as customers wait in line to purchase drinks from the cart. In no ordinary sense does the "remaining portion" of the property "remain a parking lot."

Defendant's only argument to the contrary is that, even though its activities necessarily require portions of the parking lot to be devoted to other activities, the property remains "primarily" devoted to parking. The deed restriction, however, does not require that the remaining part continue to be devoted "primarily" to parking. It requires that the "remaining portion of said described property"—that is, everything not subject to the exception for extending the existing auto parts building—"remain as a parking lot." We are not permitted to add qualifications to contractual provisions that the parties did not include. ORS 42.230 ("In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted[.]"); *Holloway v. Republic Indemnity Co. of America*, 341 Or 642, 651-52, 147 P3d 329 (2006) (citing ORS 42.230).

We conclude that the trial court did not err in determining that defendant's operation of its coffee cart violated the restriction in the deed that required the premises to remain a parking lot.

Affirmed.